**James SKINNER, Petitioner—Appellant,**

v.

**E. ROE, Warden, Respondent—Appellee.**

No. 03–56108.

D.C. No. CV–02–00624–DOC.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 2004.

Decided May 13, 2005.

James Skinner, Lancaster, CA, pro se.

Mark D. Rosenbaum, Ben Wizner, ACLU Foundation of Southern California, Los Angeles, CA, Erwin Chemerinsky, Duke University School of Law, Durham, NC, for Petitioner–Appellant.

Kenneth C. Byrne, Corey J. Robins, AGCA–Office of the California Attorney General, Los Angeles, CA, for Respondent–Appellee.

Before HUG, PREGERSON, and BERZON, Circuit Judges.

## MEMORANDUM *

After he was convicted of twenty counts of theft-related offenses, petitioner James Skinner was sentenced to 225 years to life imprisonment under California's Three Strikes Law. He challenged that sentence under the Eighth Amendment to the United States Constitution and the district court denied his petition for habeas corpus. He now appeals that decision. We have jurisdiction under 28 U.S.C. § 2253 and we affirm.[1]

We review the district court's denial of a 28 U.S.C. § 2254 habeas petition de novo. *Beardslee v. Woodford*, 358 F.3d 560, 568 (9th Cir.2004). "Under AEDPA, habeas relief is proper only if the state court's adjudication of the merits of the habeas claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Ramirez v. Castro*, 365 F.3d 755, 762 (9th Cir.2004) (quoting 28 U.S.C. § 2254(d)(1)).

Although Skinner's sentence is harsh, we cannot say that it is contrary to or an unreasonable application of clearly established federal law under the stringent standards of AEDPA. *See Lockyer v. Andrade*, 538 U.S. 63, 73–76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (delineating the appropriate deference due state court judgments under AEDPA). The Supreme Court's Eighth Amendment jurisprudence establishes "gross disproportionality" as the controlling principle in assessing petitioners' claims. *Id.* at 72. In the "extraordinary case," *id.* at 76, in which the sentence raises an inference of gross disproportionality, the court must engage in an intrajurisdictional comparison of sentences imposed for similar crimes in that jurisdiction, as well as an interjurisdicitional comparison of sentences for the same crime in other jurisdictions. *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring).

Here, the state court, applying state law, but assuming that state and federal standards are the same in this context, found that the severity of Skinner's criminal history and current offense justified the sentence. The district court, discussing *Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144, *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), *Harmelin*, 501 U.S. 957, 111 S.Ct. 2680,

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The state also argues that the petition should be denied because it was not filed within AEDPA's one year statute of limitations. The parties agree that the petition was not timely, but Skinner argues that he is entitled to equitable tolling. We need not decide the issue because we affirm the district court on the merits.

115 L.Ed.2d 836, *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), and *Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), found that Skinner's sentence did not raise an inference of gross disproportionality and denied habeas relief.

Although Skinner's criminal history is non-violent,[2] his triggering offense was not "passive," *Solem*, 463 U.S. at 296 (quoting *State v. Helm*, 287 N.W.2d 497, 501 (S.D. 1980) (Henderson, J., dissenting)). Skinner is serving *nine consecutive life sentences* for nine theft-related convictions, committed on different days; these offenses are far more severe than the uttering of a no account check that triggered the imposition of a life sentence without parole in *Solem*, a case in which the Court granted habeas relief. *Id.* at 284. Skinner's criminal history, however, is less severe than Solem's. *Id.* at 279–81 (recounting Solem's six prior felonies). *Solem*, therefore, does not provide a direct analogy for the present case.

Skinner's triggering offenses are each more serious than the theft of videotapes that lead to two sentences of life, with parole available after fifty years, in *Andrade*, 538 U.S. at 66. The Court denied habeas relief and Andrade, like Skinner, will probably die in prison. *Id.* at 79 (Souter, J., dissenting). Although Andrade's triggering offenses were each more minor than Skinner's, his criminal history, again, was more serious than Skinner's. *Id.* at 66–67 (detailing Andrade's criminal history, which included a parole violation for escaping from a federal prison and a total of five terms of incarceration).

Skinner urges that his case is most similar to that of *Ramirez v. Castro*, 365 F.3d 755 (9th Cir.2004), where we granted habeas relief to a petitioner sentenced to twenty-five years to life imprisonment for stealing a VCR from a department store. Ramirez's entire criminal history, however, consisted of the theft of a VCR and two earlier second degree robbery convictions for which he served six months in county jail. *Id.* at 768. Skinner's criminal history is more severe than that of Ramirez, each offense is more serious (because each involved breaking into a locked area), and Skinner engaged in a scheme that resulted in nine theft offenses rather than one isolated one. Each of Skinner's twenty-five-years-to-life sentences is therefore based on a considerably more serious criminal background than was Ramirez's sentence.

Skinner's criminal history, and the nature of each current offense, and the number of current offenses, make his case materially distinguishable from all of the cases discussed above. In particular, the present case is distinguishable from *Solem*, the only case in which the Supreme Court discussed a life sentence without parole for a non-violent offense, and from *Andrade*, in which the court examined two sentences without the possibility of parole until the completion of the two twenty-five year minimum terms. Because the facts of Skinner's case fall somewhere between the facts of relevant Supreme Court precedents, and are not as extreme as the facts in *Ramirez*, the state court's decision upholding his sentence cannot be considered contrary to or an unreasonable application of clearly established federal law. Thus, we AFFIRM the district court in denying Skinner's petition for habeas corpus.

**AFFIRMED.**

BERZON, Circuit Judge, concurring.

I concur in the memorandum disposition because, under *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144

---

2.  Skinner did, however, have a conviction for carrying a loaded firearm in public.

(2003), we are obligated to consider the sentence in this case not as a single life sentence (even though 225 years is, obviously, undoubtedly more than a lifetime), but as a series of twenty-five-years-to-life sentences. If we were free to focus on the total sentence, I would conclude otherwise.

*Andrade* involved two twenty-five year sentences, for two incidents of shoplifting videotapes from Kmart stores, on dates two weeks apart. The Court referred to "the state court's affirmance of two sentences of 25 years to life in prison," 538 U.S. at 68, and stated:

> [I]t is not true that Andrade's sentence can only be understood as punishment for the total amount he stole ... To the contrary, California law specifically provides that *each* violation of *Cal.Penal Code Ann.* § 666 ... triggers a separated application of the three strikes law, if the different felony counts are "not arising from the same set of operative facts." § 667(c)(6) ...; *see also* § 667(e)(2)(B). Here, Andrade was sentenced to two consecutive terms under California's law precisely because the two thefts of two different Kmart occurring two weeks apart were two distinct crimes.

*Id.* at 74 n. 1.

Moreover, the Court maintained that "Andrade retains the possibility of parole," *id.* at 74, again, apparently looking at each sentence independently. Noting the dissent's argument that "it is 'unrealistic' to think that a sentence of 50 years to life for Andrade is not equivalent to life in prison without parole," *id.* at 74 n. 1, the Court did not focus on the slim possibility that Andrade would actually live long enough to be paroled. Instead, the Court rejected a focus on the practical reality, maintaining that "[t]wo different sentences do not become materially indistinguishable based solely upon the age of the persons sentenced." *Id.*

Using this approach, it does not matter that *no one* lives 225 years. Instead, we must focus on the facts that Skinner was sentenced for nine related but temporally separate crimes; that *each* is subject to parole; and that the fact that aggregating the sentences stretches beyond a human life time does not make *each* sentence imposed different from that imposed on a person who commits a single crime identical to one committed by Skinner.

The upshot is that we have to look at this case as involving nine separate twenty-five years to life sentences, *not* as life without possibility of parole. Also, because the Court in *Andrade* rejected the dissent's argument that the consecutive stacking of sentences can be disproportionate because of the lack of connection between the recidivism rationale and the number of similar but separate criminal incidents making up the offense of conviction, we cannot rely on the consecutive stacking feature as demonstrating disproportionality. *See id.* at 74 n. 1; *id.* at 82 (Souter, J., dissenting).

The appropriate comparison therefore is, as the memorandum disposition states, to cases involving single sentences with the possibility of parole, not life sentences without possibility of parole.